**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| **KAY REDDITT,** *individually and as the Personal Representative of Thomas M. Lodahl,* <br><br> **Plaintiffs,** <br><br> v. <br><br> **LAW OFFICES OF SHAPIRO, BROWN & ALT, LLP,** *et al.* <br><br> **Defendants.** | ) <br> ) <br> ) <br> ) <br> )   Civil Action No. 2:12-cv-521 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR
AN AWARD OF ATTORNEYS' FEES AND COSTS AGAINST ALL DEFENDANTS**

Plaintiff, Kay Redditt, by counsel, individually and as the Personal Representative of Thomas M. Lodahl, respectfully moves for an award of attorneys' fees and costs pursuant to Fed. R. Civ. P. 54 and 15 U.S.C. § 1692k. Plaintiff submits this Memorandum in support of her Motion.

**STATEMENT OF THE CASE**

Plaintiff filed this Complaint against the Defendants alleging various violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (or "FDCPA") and state law claims for breach of fiduciary duty. On February 28, 2013, the Defendants presented Plaintiff with an Offer of Judgment pursuant to Fed. R. Civ. P. 68 in the amount of $2,500.00, excluding an additional amount for costs and attorneys' fees in an amount to be agreed by between counsel for the parties, or as determined by the Court upon application by Plaintiff's counsel. Since the Defendants were notified of the acceptance of the Offer of Judgment, the parties have diligently attempted to negotiate the fees and costs component but have not yet been able to reach agreement.

Plaintiff's case commenced on September 18, 2012, alleging Defendants made several misrepresentations to her that constituted violations of the FDCPA. Moreover, Plaintiff alleged that Defendants breached their fiduciary duties as trustee by pursuing foreclosure activities after repeated instructions from Plaintiff's servicer to close the file. After receiving an extension to file their answer, the Defendants refused to admit liability and instead filed a motion to dismiss the Complaint. Both parties engaged in substantial motions practice over the course of five months, expending additional time and resources for these futile motions, which were ultimately not resolved because of the Offer of Judgment. A review of the 32 entries on the docket sheet of this case demonstrates the considerable amount of time and effort expended by Plaintiff and her counsel to achieve the Offer of Judgment.

For example, Defendants' motion to dismiss was supported by a twenty-page memorandum setting forth at least six different legal theories as to why Plaintiff failed to state a claim. (*See generally* Defs.' Mem. Dis.) (Docket No. 10). In response, Plaintiff filed a 28 page opposition analyzing the deficiencies with Defendants' legal theories. (*See generally* Pl.'s Opp.) (Docket No. 17). Recognizing the validity of the legal arguments in Plaintiff's Opposition, Defendants impermissibly attempted to present entirely new legal arguments and facts in their Reply to Plaintiff's Opposition. (*See generally* Defs.' Reply) (Docket No. 21). Defendants' improper Reply to Plaintiff's Opposition triggered the necessary filing of a Motion to Strike the Defendants' Reply. (*See generally* Pl.'s Mem. (Docket No. 24)). In the alternative, Plaintiff requested leave to file a Sur-reply, which included a proposed twelve-page Sur-reply addressing the entirely new issues raised in Defendants' Reply. (*See generally* Pl.'s Mot., Ex. A (Docket No. 23)). After reviewing Plaintiff's motion and Sur-reply, Defendants filed a consent motion

requesting the Court to permit Plaintiff to file her Sur-reply, which the Court granted by an Order dated March 7, 2013.

Despite the substantial motions practice, at all times during the pendency of this case, Plaintiff voiced their willingness to settle the case and made numerous overtures to facilitate settlement – only to be rebuffed by the Defendant. However, Defendants seemed not to understand the seriousness of their actions and the liability they faced until more recently. It was not until the last day of February – eight days after Plaintiff filed her motion to strike the reply or, in the alternative, for leave to file the Sur-reply -- that Defendants submitted an Offer of Judgment to the Plaintiff for an amount that was marginally congruent to their exposure given the seriousness of the allegations here. While their claims likely may have had considerably greater value after the Defendant's motion to dismiss was ruled upon, Plaintiff accepted prior to the hearing on the Defendants' motion, thus preserving judicial economy.

Plaintiff believe that given the background and the success of the case, the attorneys' fees and costs requested are reasonable and were necessary for prosecution of the matter in light of the Congressional intent of the statute. Plaintiff's counsel is therefore entitled to an award of all such fees and costs as requested.

## ARGUMENT

### I. Standard for Awarding Attorneys' Fees

The Fair Debt Collection Practices Act, at 15 U.S.C. § 1692k provides in pertinent part that "in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3).

Because an award of attorneys' fees is mandatory under the federal consumer protection statutes, so long as the Plaintiff is "successful", the fees must be awarded. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415 n.5 (1978); *Postow v. OBA Fed. Sav. & Loan Ass'n*, 627 F.2d 1370 (D.C. Cir. 1980). A plaintiff is considered successful if he/she succeeds on any significant issue in litigation that achieves some of the benefit the party sought in bringing the suit, even if other state and federal claims are not successful. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Postow*, 627 F.2d 1370. Thus, a prevailing plaintiff must obtain at least some relief on the merits of his/her claim and obtain an enforceable judgment against the defendant in order to qualify as a successful party. *Hensley*, 461 U.S. at 433; *see also Farrar v. Hobby*, 506 U.S. 103, 109 (1992). Because the Defendants have made offers of judgment that were accepted and judgment was subsequently entered against the Defendants, Plaintiffs have succeeded on their claims and therefore are entitled to recover an award of reasonable attorneys' fees and costs.

## II. Attorney's Fees Are to be Calculated Pursuant to the Lodestar Formula

The United States Supreme Court has explained the calculation for an award of reasonable attorneys' fees as follows:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.

*Hensley*, 461 U.S. at 433; *see also People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996). Although this decision, and others cited hereinafter, arose in the context of the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, these criteria are equally applicable here. In fact, the Supreme Court explicitly stated as much in *Hensley*: "The standards set forth in this opinion are generally applicable in all cases in which

Congress has authorized an award of fees to a 'prevailing party.'" *Hensley*, 461 U.S. at 433 n.7. The Supreme Court has further stated that similar language among fee-shifting statutes is "'a strong indication' that they are to be interpreted alike." *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 758 n.2 (1989) (quoting *Northcross v. Memphis Bd. of Education*, 412 U.S. 427, 428 (1973)). The multiplication of the reasonable number of hours expended times the reasonable hourly rate is referred to as the "lodestar." *Student Pub. Interest Research Grp. v. AT&T Bell Labs.*, 842 F.2d 1436, 1441 (3d Cir. 1988).

In *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978), the Fourth Circuit held that, when determining the amount of attorneys' fees to be awarded, a district court must consider the twelve factors specified in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Barber*, 577 F.2d at 226. In *Barber*, the Fourth Circuit held that the following factors were to be considered when calculating attorneys' fees:

> (1) the time and labor expended;
> (2) the novelty and difficulty of the questions raised;
> (3) the skill required to properly perform the legal services rendered;
> (4) the attorney's opportunity costs in pressing the instant litigation;
> (5) the customary fee for like work;
> (6) the attorney's expectations at the outset of the litigation;
> (7) the time limitations imposed by the client or circumstances;
> (8) the amount in controversy and the results obtained;
> (9) the experience, reputation and ability of the attorney;
> (10) the undesirability of the case within the legal community in which the suit arose;
> (11) the nature and length of the professional relationship between attorney and client; and
> (12) attorneys' fees awards in similar cases.

*Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008). Under *Grissom,* the court should (1) calculate the lodestar which is the product of the "reasonable hourly rate" by the "hours reasonably expended," in light of the Johnson/Barber factors; (2) subtract fees for hours spent on unsuccessful claims unrelated to successful ones; and (3) award some percentage of the

remaining amount, depending on the degree of success enjoyed by the plaintiff. *Bradford v. HSBC Mortg. Corp.*, 859 F. Supp. 2d 783, 789 (E.D. Va. 2012) (internal citations omitted).

In this case however, the Plaintiff was *entirely* successful on her claims and the Court should find that an award for attorneys fees and costs sought herein is reasonable:

### A.     *The time and labor required*

Much of the initial time expended in the case was spent gathering information regarding the Defendants' abusive debt collection practices regarding the Plaintiff. Plaintiff and their counsel spent a significant amount of time investigating the Defendant's behavior before drafting and filing the complaint with this Court. A significant portion of the time spent in the latter part of this case was to respond to Defendants' motion to dismiss and their Reply to Plaintiff's Opposition, which raised entirely new issues not referenced previously addressed in the Defendant's motion to dismiss or Plaintiff's Opposition. Defendant's Reply required Plaintiff to move to strike the Reply or for leave to file a Sur-reply, which required both factual and legal research into the new matters addressed in the Reply. The amount of time devoted to the briefing in this case was substantial and caused entirely by the litigation strategy of the Defendants.

The time expended in this matter is appropriate to the representation of a consumer plaintiff and was modest under the circumstances due to counsel's experience in consumer protection litigation. *Withers v. Eveland*, 997 F. Supp. 738, 740 (E.D. Va. 1998) (finding that "there are very few attorneys who specialize in litigating Consumer Credit Protection Act cases"); *Jones v. Robert Vest*, 2000 U.S. Dist. LEXIS 19026, *10 (E.D. Va. 2000) (finding that in a consumer case "the time spent on legal research would have conceivably been much greater for an attorney with less experience in this area of consumer protection law"). This point is especially true in this case. Plaintiff's counsel had to devote a relatively modest amount of time

6

to new legal research, which provides further support for their hourly rate as discussed further herein.

Plaintiff's counsel has considerable experience in the area of consumer protection work and in federal litigation, devoting the entirety of their practice to assisting consumers of modest means. While Plaintiff's counsel was additionally responsible for handling the managerial functions (and often administrative tasks) of their comparatively small firm, they perform many of the tasks required to prosecute a case on their own. As explained with approval in *Bailey v. District of Columbia*, 389 F. Supp. 888, 891 (D.D.C. 1993):

> [A]ttorneys like plaintiff's counsel, operating either as solo practitioners or in small firms, often lack the resources to retain a large staff of junior lawyers who could handle such [clerical] tasks more economically. Denying plaintiffs compensation for these tasks would unfairly punish plaintiffs and their counsel for not staffing this case as if they had the manpower of a major law firm.

*See also Withers*, 997 F. Supp. at 740; *Morgan v. Credit Adjustment Bd.*, 1998 U.S. Dist. LEXIS 8135, at *5 (E.D. Va. May 18, 1998). The time spent by Plaintiff's counsel to successfully complete this litigation is therefore reasonable and provides no reason to adjust the lodestar downward. In fact, given the time saved by Plaintiff's counsel in the exercise of billing discretion and, where possible, assigning tasks to its junior attorney and administrative staff, it should be adjusted upward.

B.  ***The novelty and difficulty of the questions***

Most of the questions presented by this case were not new issues for this Court. Although this Court has been presented with many consumer cases in the past several years and Plaintiff's counsel has brought several similar cases before this Court, including the *James v. Midland* matter recently, these facts should not result in a downward adjustment of the lodestar amount. Even if the case is entirely straightforward, the lodestar amount may not be reduced.

7

*DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985). However, this case also included a significantly more complex breach of fiduciary duty claim, which requires additional preparation and time. In the context of consumer cases, breach of fiduciary duty claims, at least in this Circuit, provide more novel questions and issues than the more commonly litigated FDCPA claim. The novelty and difficulty of the issues therefore provides no basis to adjust the lodestar downward but, arguably, provides a basis to adjust the lodestar upward.

C. *The skill requisite to perform the legal services properly*

Plaintiff's counsel knows of only a few attorneys in Virginia who are able and willing to litigate consumer protection cases. Most attorneys do not recognize the legal issues involved in such cases, and members of the Virginia Bar generally reject clients' requests for representation in consumer protection cases. This is especially true for more complex claims such as Plaintiff's breach of fiduciary duty, which required substantial research on recent updates to Virginia law. Additionally, the active and successful litigation of civil claims in federal court, particularly in the Eastern District of Virginia's "rocket docket", requires a higher skill level than litigation in a less vigorous forum. Plaintiff's counsel not only has the skill and knowledge to perform these services properly, they applied such skill and knowledge in this case resulting in a prevailing judgment.

D. *The preclusion of other employment*

The time spent on this case against the Defendants was not, and could not be, spent at the same time as on litigating other cases. There are substantial opportunity costs in preparing the necessary documentation and briefing to represent a plaintiff in a contingency or fee shifting case in federal court. The time Plaintiff's counsel expended on their behalf was time that would have been spent on other matters had this case not been filed or litigated. Additionally, the time

8

spent information gathering information or interviewing the Plaintiff precluded Plaintiff's counsel from spending that time evaluating other potential clients or cases.

It is appropriate in considering what a reasonable fee would be to consider that whenever an attorney takes a case, he does so to the exclusion of accepting other work. Plaintiff's counsel expended the requisite amount of time reviewing the case and litigating it to its conclusion. Thus, some consumers did not receive the same help provided to this Plaintiff. Counsel does not have the resources of a large firm and must review, select and turn down cases accordingly. It is clear that the time spent on this case would have been expended on other matters, and therefore this factor provides no basis for any adjustment of the lodestar.

E.     *The customary fee for like work in the community*

Plaintiff's attorneys' fee request is well within the range of fees charged by attorneys with comparable experience and in a comparable area of practice. Their fee is thus reasonable and represents the market rate for like work in this area, as more fully set forth in the Declaration of Kristi C. Kelly filed herewith.

The National Law Journal's Annual Law Firm Billing Rate Survey from December 19, 2011 provides a starting point for determining reasonable attorney billing rates. The National Law Journal is a widely respected national legal publication that has surveyed and tracked law firm billing rates nationwide for over ten years. As reflected in the survey, law firm billing rates for partners of various levels in the Washington, D.C. and Northern Virginia market range from $250 per hour to $675.00 or more. See, for example, the entries for Covington & Burling; Dickstein, Shapiro, Morin & Oshinsky; Hogan & Hartson; McGuire Woods; and McKenna, Long & Aldridge. *See Annual Law Firm Billing Rate Survey*, NAT'L L.J., Dec. 19, 2011.

The submitted hourly rate of $300 for an attorney of Kristi C. Kelly's skill, experience, and credentials is well within the mid-range of fees charged, particularly given her years federal consumer protection practice in both individual and class actions. *Kelly Decl.*, Exhibit 1. In fact, less than one month ago, Ms. Kelly's hourly rate was approved by this Court and complimented by Judge Ellis during a hearing for final approval of a class action settlement. *See Tsvetovat, v. Segan, Mason, & Mason, PC,* Civ. Action No. 1:12-cv-510, Settlement Hr'g Tr. 26:8-16, April 12, 2013 (stating "And the fees are reasonable and the incentive payment is reasonable. Put that in there – well, it's in there already. But I clearly have examined that, considered it and approved it. I think it's reasonable in the circumstances. And again, I want to compliment counsel on making the effort to settle this matter, and to have succeeded. I think it's a sensible, reasonable settlement."). While not previously considered by this Court, it may take judicial notice based on its own experience that the requested rates of $225 and $200 for Mr. Guzzo are reasonable. The work that could be performed by Mr. Guzzo was so assigned, rather than requiring Ms. Kelly to perform those tasks. Id.

The submitted hourly rate of $375 for an attorney of Mr. Erausquin's skill, experience, and credentials is well within the mid-range of fees charged, particularly given his years of exclusive federal consumer protection practice in both individual and class actions. In 2008, an hourly rate of $350 was submitted as part of a lodestar crosscheck in the *Williams v. LexisNexis* matter, and this court ultimately approved the fee requested. Similarly, Mr. Bennett's submitted rate of $475 per hour is also within the range of acceptable fees for an attorney of Mr. Bennett's skill, experience, and credentials and has been approved in multiple Eastern District of Virginia cases. He has been litigating consumer cases for nearly two decades and has been named as a multi-year Virginia Super Lawyer and a Virginia Leader in the Law. *Erausquin Decl.*, Exhibit 2.

Moreover, Mr. Bennett's hourly rate and those of other attorneys working at Consumer Litigation Associates, P.C. were also determined to be reasonable and appropriate in *Reynolds v. Reliable Transmissions, Inc.*, 2010 WL 2640065 (June 29, 2010). To that end, the Court wrote:

> Plaintiff's counsel asserts an hourly rate of $350.00 for Robin Abbott, $275.00 for Gary Abbott, and $450.00 for Leonard Bennett. Reliable does not dispute the rates, and the Court otherwise finds such hourly rates to be reasonable and appropriate, the Court being familiar with comparable market rates and the level of expertise demonstrated by each counsel in numerous appearances before the Court. Accordingly, the Court will apply the listed rates in its calculation of attorneys' fees.
>
> The Court calculates the lodestar as follows:
>
> | | | |
> |---|---|---|
> | Robin Abbott | 43.25 hours at $350.00/hour | $15,137.50 |
> | Gary Abbott | 21 hours at $275.00/hour | $5,775.00 |
> | Leonard Bennett | 13 hours at $450.00/hour | $5,850.00 |

Id. at *9. Moreover, this Court also approved the hourly rates of Mr. Bennett and another attorney at Consumer Litigation Associates, Susan Rotkis, within the past month in *Tsvetovat*. In addition, Ms. Rotkis recently provided a declaration on the reasonableness of another attorney's fees in an FDCPA case before this Court. In the United States Magistrate Judge's Report and Recommendation, Judge F. Bradford Stillman wrote:

> [Plaintiff's counsel] also asserted that a reasonable rate for her representation is $275 per hour. In support of this claim, she submitted the Declaration of Susan M. Rotkis, a respected local attorney who has litigated more than forty federal consumer protection cases, including cases arising under the FDCPA. Ms. Rotkis' Declaration stated that the Court has approved her hourly rate of $350 per hour and that her law firm currently bills her clients at $375 per hour based on her education, experience, and expertise. The partners of Ms. Rotkis' law firm, Consumer Litigation Associates, P.C., bill at the rates of $375 and $450 per hour.
>
> …
>
> Ms. Rotkis is an attorney well-versed in matters arising under the FDCPA and is clearly familiar with the appropriate fees in such cases. This court gives her

> Declaration full credibility and finds that [Plaintiff's counsel's] hourly rate is conservative and certainly reasonable in these circumstances.

*Richardson v. William Sneider & Associates, LLC*, Civ. Action No. 4:12-cv-25, pages 29-31 (July 24, 2012) (Docket No. 18), attached as Exhibit 3. While not previously considered by this Court, it may take judicial notice based on its own experience that the requested rates of $250 for Ms. Mason and Ms. Nash are reasonable. The work that could be performed by them was so assigned, rather than requiring Mr. Erausquin or Mr. Bennett to perform those tasks. Id.

The submitted hourly rate of $425 for an attorney of Dale W. Pittman's skill, experience, and credentials is well within the mid-range of fees charged, particularly given his years federal consumer protection practice with a specific emphasis on representing consumer debtors under the FDCPA. *Pittman Decl.*, Exhibit 4. He has been litigating consumer cases for over four decades both in private practice and as the General Counsel of the Southside Virginia Legal Services. Id. at 3. In addition, Mr. Pittman has given a number of lectures to professional groups and attorneys on consumer law issues, including many lectures on the FDCPA. *Id*. at 9. Recently, Mr. Pittman's hourly rate was approved by this Court in *Randle v. H&P Capital, Inc.*, No. 3:09cv608, 2010 U.S. Dist. LEXIS 74994 (E.D. Va. July 21, 2010), adopted in part 2010 U.S. Dist. LEXIS 101509 (E.D. Va. Sept. 23, 2010); affirmed in part and appeal dismissed in part by *Randle v. H&P Capital, Inc.*, 2013 U.S. App. LEXIS 4506 (4th Cir. Va., Mar. 5, 2013).

The submitted hourly rate for Plaintiff's attorneys is also less than the hourly rates charged by the attorneys hired by the Defendants in this matter based on the standard hourly rates charged by Troutman Sanders, LLP. This is confirmed by the recent declaration of Troutman Sanders's partner, Matthew D. Murphey ("Mr. Murphey"), when petitioning for attorneys' fees in the United States District Court for the District of Maryland in *Life Technologies Corporation v. Life Technologies Corporation*, Civil Action No. 8:10-cv-03527. In

his declaration, Mr. Murphey provided the standard hourly rates of six lawyers at Troutman Sanders. *Murphy Decl.*, Exhibit 5. These hourly rates ranged from $580 for an attorney licensed in 1998 to $260 for an attorney licensed in 2010. *Id*.

Federal litigation, particularly in the Eastern District of Virginia, is challenging and oftentimes requires an experienced knowledge of complex rules of civil procedures and of evidence. Legal fees for attorneys experienced in this area of work are rightly in the upper echelon of hourly rates, as further discussed below with regard to fee awards in similar cases.

### F.     *Whether the fee is fixed or contingent*

In consumer protection cases, the fee is very often contingent—not on the amount of damages, but on award by the court or agreement of the opponent. In a private attorney general Fair Consumer Reporting Act (or "FCRA") case, the sister statute to the FDCPA, Congress encourages counsel to bring suit, recognizing that counsel cannot charge the client an hourly fee, because the fee may be out of proportion to the recovery. This is very often the case in actions brought under the FDCPA, where the Plaintiff seeks an award of statutory damages, in absence of fungible harm, to deter future violations of the law.

In *Johnson*, the Court ruled that the fixed/contingent nature of the fee was important because, "[i]n no event . . . should the litigant be awarded a fee greater than he is contractually bound to pay, if indeed the attorneys have contracted as to an amount." 488 F.2d at 718. However, this portion of the ruling was expressly rejected by the Supreme Court in *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) ("But as we see it, a contingent-fee contract does not impose an automatic ceiling on an award of attorneys' fees and to hold otherwise would be inconsistent with the statute and its policy and purpose."). Conversely, the Court ruled that the fee award does not impose a cap on a contingent fee agreement; the attorney can get more from his client if

his agreement so provides. *See Venegas v. Mitchell*, 495 U.S. 82, 87–90 (1990). Nor does the contingency factor provide a basis for an upward adjustment of the fee request. *City of Burlington v. Dague*, 505 U.S. 557 (1992). Thus, the current cases hold that the fixed or contingent nature of the fee agreement neither reduces nor enhances the fee award.

### G. *Time limitations imposed by the client or the circumstances*

The time limits in this case were only those imposed by the applicable statutes of limitations, the Rules, and those set by the Court. In the Eastern District of Virginia, these time limitations are often substantial as the Court is committed to a speedy progression of cases through the litigation process. This factor provides no basis here for any change in the lodestar amount.

### H. *The amount involved and the results obtained*

"[C]ourts generally will not look to the size of the damage award in determining a reasonable attorney's fee in consumer cases." *Smith v. Chapman*, 436 F. Supp. 58, 66 (W.D. Tex. 1977) (awarding the Plaintiff the maximum $1,000.00 statutory damages available to him under the Truth in Lending Act). The Fourth Circuit addressed the issue of proportionality between the consumer's recovery and the amount of attorneys' fees to be awarded in *Yohay v. City of Alexandria Employees Credit Union*, a case involving the FCRA. In rejecting the Defendant's claim urging proportionality, the Fourth Circuit stated:

> Proportionality of attorneys' fees to the amount recovered is not required in every action brought pursuant to the FCRA. Since there will rarely be extensive damages in an FCRA action, requiring that attorneys' fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act.

*Yohay*, 827 F.2d 967, 974 (4th Cir. 1987). In this case, the Plaintiff recovered a combined amount of $2,500.00, inclusive of statutory and actual damages, which exceeds the amount of statutory damages available to them under the FDCPA. Plaintiff were successful in their lawsuit

14

and their reason for bringing the suit was not in vain or simply to harass the Defendants. Instead, they had valid claims upon which they ultimately prevailed. This factor provides no reason for any downward adjustment of the lodestar, but can provide a basis for an upward adjustment of the lodestar amount.

### I. *The experience, reputation and ability of the attorney*

The experience, reputation, and ability of Plaintiff's counsel are reflected in their Declaration. Ms. Kelly, Mr. Erausquin, Mr. Bennett and Mr. Pittman, have substantial experience with consumer protection actions litigated in federal court and are capable of handling complex consumer litigation. This can provide a basis for an upward adjustment of the lodestar amount.

### J. *The undesirability of the case*

To counsel's knowledge, there are only a handful of attorneys who practice in the Norfolk market who also practice in federal court and in the area of consumer protection law. Of those few attorneys, even fewer litigate cases under the FDCPA and fewer still have experience with breach of fiduciary duty claims. This limited access to legal services for consumers is due in the largest part to the undesirability of these cases. The FDCPA is limited to statutory damages of $1,000.00 where there is no actual damage to the Plaintiff, and therefore attracts a limited quantity of attorneys willing to practice in this area of law. Plaintiff's counsel has chosen this niche area of practice, along with several other consumer protection statutes, and devotes a considerable amount of time to consumer protection without any guarantee of payment. Few attorneys are willing to accept these risks and fewer still would help at all if they were unable to count on a full fee award if successful. Therefore, Plaintiff's counsel's willingness to take cases

such as these, that other lawyers choose to decline, can provide a basis for an upward adjustment of the lodestar amount.

K.   *The nature and length of the professional relationship with the client*

Plaintiff engaged their counsel to litigate their claims against the Defendants. Plaintiff's counsel was retained particularly for pursuit of this claim in federal court. This factor is in some respects inapplicable or neutral to an attorney whose representation is limited to consumer protection claims, which are not ongoing matters, and thus provides neither a basis to increase or decrease the lodestar amount.

L.   *Awards in similar cases*

Plaintiff's attorneys' fee request is within the prevailing market range in this type of representation. *See Blum v. Stenson*, 465 U.S. 886 (1984). The federal courts recognize that fee awards are to mimic the marketplace. Thus, "[p]aying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." *Tolentino v. Friedman*, 46 F.3d 645, 653 (7th Cir. 1995); *see also Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164 (7th Cir. 1997). For these reasons, the size of the award sought provides no reason to make any adjustment to the lodestar.

Thus, the lodestar calculation for the award of attorneys' fees to the plaintiff in this matter for the time prior to the filing of this motion and memorandum by Ms. Kelly totals $3,552.17, 11.80 hours multiplied by $300.00 per hour; Mr. Guzzo totals $5,022.50, 23.40 hours multiplied by $225.00 or $200.00 per hour; Mr. Erausquin totals $5,437.50, 14.5 hours multiplied by $375.00 per hour; by Mr. Bennett totals $3,825.00, 8.5 hours multiplied by $475.00 per hour; by Ms. Rotkis totals $562.50, 1.5 hours multiplied by $375.00 per hour; by Ms. Mason totals

$7,237.50, 28.95 hours multiplied by $250.00 per hour; by Ms. Nash total $1,225.00, 4.9 hours multiplied by $250.00 per hour; by Mr. Pittman totals $1,742.50, 4.1 hours multiplied by $425.00 per hour. Plaintiff additionally request reimbursement for $350.00 in costs and expenses for the filing fee to the Court

These costs are recoverable in addition to the attorneys' fees. "[C]osts other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1); *see also* 15 U.S.C. §1692k(a)(3).

Adding the attorney's fee request discussed above in the amount of $28,604.67 the costs request of $350, produces a total request of attorneys' fees and costs in the amount of $28,954.67 excluding the fees and costs expended in the filing of this Motion. As further set forth below, Plaintiff reserves the right to supplement the time prior to a final award should a hearing or additional briefing be required. They will, of course, work with the Defendant to agree on a result that does not require the expenditure of additional judicial resources.

### III. Plaintiff Will Seek a Supplemental Award of Attorney's Fees for the Time Expended Litigating Attorney's Fees and Other Matters

The Declarations submitted by Plaintiff's counsel detail the time expended prior to the preparation of this Motion, brief and supporting documentation. The additional time expended for the filing of this Motion and attendance at a hearing, if required, and any other matter will be submitted when work of Plaintiff's counsel is completed. An award of fees is appropriate for the time expended in pursuing a motion for an award of attorneys' fees. *Kerns v. Consol. Coal Co.*, 247 F.3d 131 (4th Cir. 2001). The time spent pursuing fees is to be awarded so that the fees awarded pursuant to a statute are not diminished. *Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir. 1986); Hyme*s v. Harnett Cnty. Bd. of Ed.*, 664 F.2d 410, 413 (4th Cir. 1981); *Spellan v. Bd. of Educ. for Dist. 111*, 69 F.3d 828, 829 (7th Cir. 1995); *Haitian Refugee Ctr. v. Meese*, 791 F.2d

1489, 1500–01 (11th Cir. 1986); *Johnson v. Mississippi*, 606 F.2d 635, 638 (5th Cir. 1979); *David v. City of Scranton*, 633 F.2d 676 (3d Cir. 1980). The principals established in *Hensley v. Eckerhart* also apply to attorneys' fees awarded for litigating attorneys' fees claims. *In re Burlington Northern, Inc.*, 832 F.2d 430, 436 (7th Cir. 1987).

After completion of briefing and a hearing, Plaintiff's counsel will submit a Supplemental Motion for an Award of Attorney Fees and Declarations in support thereof as necessary.

## CONCLUSION

Plaintiffs should be awarded damages, plus attorneys' fees and costs in the total amount of $28,954.67 for work performed and costs expended through Plaintiffs' acceptance of Defendants' offer of judgment and to the exclusion of those fees and costs expended in pursuing this Motion. Further, Plaintiffs should be awarded costs and attorneys' fees upon the completion of the briefing, any hearings, and other matters required to bring this action to a conclusion.

Respectfully submitted,

KAY REDDIT, *individually and as the Personal Representative of Thomas M. Lodahl,*

By: /s/
Kristi C. Kelly, Esq., VSB #72791
SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive, 2nd Floor
Fairfax, VA 22030
(703) 277-9774
(703) 591-9285 Facsimile
kkelly@siplfirm.com

Leonard A. Bennett, VSB #37523
Susan M. Rotkis, VSB # 40693
CONSUMER LITIGATION ASSOC., P.C.

763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA 23601 (757) 930-3660
(757) 930-3662 Facsimile
lenbennett@clalegal.com
srotkis@clalegal.com

Dale W. Pittman, VSB#15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
(804) 861-6000
(804) 861-3368 Facsimile
dale@pittmanlawoffice.com

Matthew J. Erausquin, VSB #65434
CONSUMER LITIGATION ASSOC., P.C.
1800 Diagonal Rd, Suite 600
Alexandria, VA 22314
(703) 273-7770
(888) 892-3512 Facsimile
matt@clalegal.com
*Counsel for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of April, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Bizhan Beiramee
BEIRAMEE LAW GROUP, PC
7508 Wisconsin Avenue, Second Floor
Bethesda, MD 20814
(703) 483-9600
(703) 483-9599 Facsimile
bbeiramee@beiramee.com

John C. Lynch, VSB # 39267
Ethan G. Ostroff, VSB # 71610
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
john.lynch@troutmansanders.com

*Counsel for Defendants*

/s/
Kristi C. Kelly, Esq., VSB #72791
SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive, 2nd Floor
Fairfax, VA 22030
(703) 277-9774
(703) 591-9285 Facsimile
kkelly@siplfirm.com